## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                    File Nos.  24-CR-00206 (JMB/SGE)

      Plaintiff,

v.

Jumoke Ace Maceo Cryer(1) and                **ORDER**
Christopher Charles Traxler(3),

      Defendants.

---

Raphael Coburn, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Glenn P. Bruder, Mitchell, Bruder & Johnson, Eden Prairie, MN, for Defendant Jumoke Ace Maceo Cryer.

Aaron J. Morrison and Daniel P. Huddleston, Office of the Federal Defender, Minneapolis, MN, for Defendant Christopher Charles Traxler.

---

This matter is before the Court on Defendants Jumoke Ace Maceo Cryer's and Christopher Charles Traxler's Objections to the Report and Recommendation (R&R) of United States Magistrate Judge Tony Leung, issued on March 20, 2025.  (Doc. Nos. 111, 112.)  In the R&R, the Magistrate Judge recommended that the Court deny Cryer's motion to suppress evidence from search and seizure, Cryer's motion to dismiss Count 9 of the Indictment, Traxler's motion to dismiss Count 6 of the Indictment, Traxler's motion to suppress statements, and Traxler's motion to suppress fruits of search and seizure.  (Doc. No. 103.)  For the reasons discussed below, the Court denies the motions and adopts the R&R.

1

## BACKGROUND

**A.    Warrant for and Search of Traxler's Graham Avenue Residence**

On May 30, 2024, a St. Paul police officer obtained a warrant to search an apartment on Graham Avenue in St. Paul (May Warrant).  (Gov. Ex. 4.)  In the supporting affidavit, the police officer averred that, on May 5, 2024, around bar-close time, St. Paul police officers responded to a report of gun shots near a bar along West Seventh Street in St. Paul.  (*Id.* at 2.)  Officers found two groupings of spent-shell casings in the alley behind the bar.  (*Id.*)  About twenty minutes after officers responded to the area of the bar, a male, J.S., walked into a nearby hospital with a gunshot wound to his lower abdomen.  (*Id.*)

The affiant also explained that based on a review of surveillance videos and interviews with eye-witnesses, law enforcement officers determined that the person who shot J.S. entered an SUV after the shooting.  (*Id.* at 3.)  The SUV was registered to Amir Raheem McKeever,[1] who law enforcement officers later determined was the shooter.  (*Id.*)  After obtaining a phone number and ping warrant for McKeever's phone, law enforcement officers discovered that McKeever appeared to spend a significant amount of time at two addresses—one in Woodbury, Minnesota, and another on Graham Avenue in St. Paul.  (*Id.* at 4–5.)  According to DVS records, Traxler, who was also a "top caller" in McKeever's phone records, resided in an apartment at the Graham Avenue address.  (*Id.* at 4.)  McKeever's phone records also showed that he spent time at the Graham Avenue apartment the day after the shooting.  (*Id.* at 5.)

---

[1] McKeever is a co-defendant in this matter.

Based on law enforcement officers' investigation of McKeever's whereabouts in the days and weeks before and after the shooting, the affiant believed that "MCKEEVER would keep personal property at both [the Woodbury and Graham Avenue] addresses," and that evidence of the shooting—for example, ammunition and casings, firearms—would be found in the Graham Avenue apartment. (*Id.* at 1, 5.) A Ramsey County District Court Judge issued the May Warrant. (*Id.* at 7–9.)

During execution of the May Warrant, law enforcement officers recovered controlled substances, firearms, and documents. (*Id.* at 4.) Based on the recovery of these items, officers then obtained additional warrants to search for additional evidence in the Graham Avenue apartment, to search and conduct an ion scan of Traxler's apartment on Thompson Avenue in St. Paul, to track Traxler's phone, to search Traxler's vehicles, to search Traxler's financial records, and to arrest Traxler.

## B.  Traxler's Statements to Law Enforcement

On June 14, 2024, Traxler was arrested and brought into custody at the Ramsey County Law Enforcement Center. (Gov. Ex. 3.) Law enforcement officers questioned him at for thirty minutes following his booking. (*Id.*) About six minutes into the interview, an interviewing officer read Traxler the rights advisory required by *Miranda v. Arizona.* (*Id.*) After providing the *Miranda* warning, law enforcement officers questioned Traxler about his involvement with the Graham Avenue apartment. (*Id.* at 6:17–33:40.) Traxler denied knowledge of any drug activity associated with the apartment. (*Id.*)

### C.    Search of Cryer's Bloomington Residence and a Blue BMW

In their investigation, law enforcement officers reviewed surveillance footage from outside the Graham Avenue apartment.  On surveillance footage from June 4, 2024, law enforcement officers observed Cryer with McKeever loading cardboard boxes into his BMW, which was parked in the garage of the Graham Avenue apartment.  (Gov. Ex. 1 at 6.)  These boxes matched boxes retrieved by law enforcement from the Graham Avenue apartment on June 5, found to contain methamphetamine and cocaine.  (*Id.* at 5.)  Officers also observed Cryer later that evening meeting with several people inside and outside his BMW while parked on a street in St. Paul.  ((*Id.* at 7.)   The surveillance video also shows Cryer delivering what appeared to be a box or bag to a residential address.  (*Id.*)  After identifying Cryer, law enforcement officers learned that he was being investigated as a person of interest in a vehicular shooting that occurred in St. Paul in May 2024.  (*Id.* at 6.)  Law enforcement officers identified the vehicle from the reports as a rental vehicle that had been rented in Cryer's girlfriend's name; law enforcement recovered the vehicle and identified what appeared to be new damage caused by gunfire to the car.  (*Id.* at 10.)

On June 24, 2024, law enforcement officers obtained a warrant to search Cryer's Bloomington residence for contraband and paraphernalia related to his suspected criminal activities, including firearms, ammunition, cell phones, controlled substances, and currency (June 24 Warrant).  (Gov. Ex. 1 at 12–14.)  The June 24 Warrant did not list any vehicles to be searched.  (*Id.*)  During execution of the June 24 Warrant, law enforcement officers recovered several cell phones and articles of clothing.  (Gov. Ex. 2 at 9; Doc. No. 111 at 7.)  They also seized two automobiles, a blue BMW and a white Chevrolet, which

were towed to an impound lot. (Gov. Ex. 2 at 9.) Later that same day, a St. Paul Police Officer obtained a warrant to search both vehicles. (*Id.* at 11–12.) While searching the vehicles, law enforcement officers located a gun hidden in the engine compartment of the BMW. (Doc. No. 111 at 2.)

### D.    The Indictment

On July 31, 2024, Cryer, Traxler, and McKeever were indicted. (Doc. No. 1.) The Indictment charged both Traxler and Cryer with conspiracy to distribute methamphetamine and cocaine (Count 1). (*Id.*) In addition, the Indictment included three additional individual charges against Traxler: possession with intent to distribute methamphetamine and cocaine (Count 2); possession of a firearm after being convicted of a felony (Count 6); and possession of a firearm in furtherance of drug trafficking (Count 7). (*Id.*) The Indictment also charged Cryer with two additional offenses: possession of a firearm after being convicted of a felony (Count 8) and possession of body armor after being convicted of a violent felony (Count 9). (*Id.*)

Traxler and Cryer both filed pretrial motions in December 2024. Traxler moved to dismiss Count 6 of the Indictment and to suppress evidence and statements from the investigation. (Doc. Nos. 72, 74, 75.) Cryer moved to dismiss Count 9 of the Indictment and to suppress evidence seized from the execution of the search warrant. (Doc. Nos. 68, 69.) On January 6, 2025, the Magistrate Judge held an evidentiary hearing on Traxler's and Cryer's pretrial motions. (Doc. No. 77.) The Magistrate Judge subsequently issued the R&R, in which he recommends denial of all of Cryer's and Traxler's motions. Specifically, the Magistrate Judge makes the following recommendations concerning

5

Traxler's motions: (1) denial of the motion to dismiss Count 6 because *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024) forecloses dismissal; (2) denial of the motion to suppress Traxler's post-*Miranda* statements to law enforcement because law enforcement officers used no coercion or deliberate effort to circumvent Traxler's *Miranda* rights; and (3) denial of the motion to suppress evidence obtained during the search of the Graham Avenue apartment because the May Warrant was supported by probable cause. In addition, the Magistrate Judge makes the following recommendations concerning Cryer's motions: (1) denial of the motion to dismiss Count 9 because 18 U.S.C. § 931(a)(1)—the statute Cryer is alleged to have violated in Count 9—falls within Congress's authority to regulate interstate commerce; and (2) denial of the motion to suppress evidence obtained during the search of the blue BMW because the June 24 Warrant authorized law enforcement officers to seize Cryer's automobiles, or, in the alternative, the seizure fell within the automobile and plain-view exceptions to the Fourth Amendment's warrant requirement.

## DISCUSSION

Traxler and Cryer now object to the Magistrate Judge's recommendations to deny their pretrial motions. (*See* Doc. Nos. 111, 112.) District courts conduct a de novo review of any portion of an R&R to which a defendant makes specific objections. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. L.R. 72.2(b). For the reasons discussed below, the Court overrules Traxler's and Cryer's objections and adopts the R&R.

## I.     TRAXLER'S OBJECTIONS

### A.     Motion to Dismiss Count 6

Traxler objects to the Magistrate Judge's recommended conclusion that 18 U.S.C.

6

§ 922(g)(1)—the statute he is charged with violating in Count 6—is constitutional, both facially and as applied.  (Doc. No. 112 at 19.)  The Magistrate Judge reasons that clear and binding Eighth Circuit precedent forecloses Traxler's constitutional arguments.  (Doc. No. 103 at 9 (citing *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024).)  In his Objection, Traxler does not substantively challenge the Magistrate Judge's reasoning; instead, he clarifies that his objection is made for the sole purpose of "preserv[ing] the issue for review in the event of intervening authority issued by higher courts."  (Doc. No. 112 at 19.)  The Court discerns no error in the Magistrate Judge's analysis and concurs that binding Eighth Circuit precedent forecloses Traxler's arguments on this issue.

### B.    Post-*Miranda* Statements

Traxler also objects to the Magistrate Judge's recommendation that this Court deny the motion to suppress Traxler's post-*Miranda* statements.   (Doc. No. 112 at 16–19.)  Traxler argues that that law enforcement officers violated his Fifth Amendment rights by commencing a custodial interview[2] prior to issuing the *Miranda* warning, rendering both the pre- and post-*Miranda* statements inadmissible.[3]  The Magistrate Judge recommends a conclusion that the interview was constitutionally permissible.  (Doc. No. 103 at 12.)  The Court agrees with the Magistrate Judge's analysis.

---

[2] At the hearing on this motion, audio of the challenged interrogation was presented to the Court.  (*See* Doc. No. 77; Gov. Ex. 3.)

[3] Because the Government does not seek to admit Traxler's pre-*Miranda* statements, Traxler makes no objection to the recommendation that the motion to suppress pre-*Miranda* statements be denied as moot.  (Doc. No. 112 at 17.)  Therefore, the Court only analyzes the post-*Miranda* statements.  *See* 28 U.S.C. § 636(b)(1).

Two Supreme Court cases govern Traxler's challenge. In *Oregon v. Elstad*, 470 U.S. 298 (1985), the Court held that statements issued after a proper *Miranda* warning were admissible unless there was evidence of "deliberately coercive or improper tactics in obtaining the initial statement." *Id.* at 313. The Court later clarified *Elstad*'s reach in *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Seibert*, the Court declined to extend *Elstad* to permit the admission of post-*Miranda* statements where the facts indicated "a police strategy adopted to undermine the *Miranda* warnings." *Id.* at 616. When there is evidence that law enforcement officers intentionally delayed providing *Miranda* warnings to undermine their efficacy, courts are directed to evaluate the voluntariness of the statements according to various factors set forth in *Seibert*. *Id.* at 615.

Following this caselaw, courts have declined to suppress brief post-*Miranda* statements where there is no indication of a calculated effort to circumvent *Miranda* or indicia of coercion. *See United States v. Torres-Lona*, 491 F.3d 750, 757–58 (8th Cir. 2007) (summarizing applicable standard and concluding that the post-*Miranda* statements were admissible because the officers' failure to warn at the outset was not deliberate and lacked evidence of coercion); *see also, e.g.*, *United States v. Jones*, 70 F.4th 1109, 1114 (8th Cir.), *cert. denied*, 144 S. Ct. 366 (2023) (concluding that the post-*Miranda* statements were admissible because the pre-*Miranda* questioning lacked evidence of coercion and was "brief and narrow in scope"); *United States v. Walker*, 518 F.3d 983, 985 (8th Cir. 2008) (concluding that the post-Miranda statements were admissible because there was no evidence of coercion or improper tactics); *cf. Seibert*, 542 U.S. at 605, 616 (concluding that an impermissible two-step interrogation occurred because law enforcement officers

questioned a defendant for over thirty minutes before reading the *Miranda* warning, and then used her pre-*Miranda* statements to extract a confession post-*Miranda*); *United States v. Aguilar*, 384 F.3d 520, 522, 525 (8th Cir. 2004) (concluding that an impermissible two-step interrogation occurred because the first-phase interrogation "consisted of more than routine booking questions," lasted ninety minutes, and the interrogating police officer used improper tactics including becoming angry, kicking at his desk, and swearing at the suspect "when [he] did not respond in a manner anticipated by" the officer). The Government bears the burden to establish "by a preponderance of the evidence that the failure to provide warnings at the outset of interrogation was not deliberate." *Torres-Lona*, 491 F.3d at 758.

In this case, the Court agrees with the Magistrate Judge that the Government has met this burden. Law enforcement officers conducted a custodial interview with Traxler shortly after arresting and taking him into custody. (Gov. Ex. 3.) Approximately six minutes into the thirty-four-minute interview, officers read Traxler his *Miranda* rights. (*Id.* at 6:17.) The first six, pre-*Miranda* minutes of the interview focused on routine booking questions, including asking Traxler about his name, age, address, phone number, and place of birth. (*Id.* at 0:00–2:03.) Around the two-minute mark, there is a brief exchange in which an officer asked Traxler whether he "has any other phones because we found like three of them." (*Id.* at 2:03–2:08.) When Traxler does not supply the phone number of his third phone, the officer asked him why he has a third phone, and Traxler explained that he was having difficulties with his phone bills. (*Id.* at 2:15–2:35.) The officer then returned to basic biographical questions including questions about Traxler's employment, last grade of completion, place of schooling, and prior criminal history. (*Id.* at 2:35–6:17.) The

officer then read Traxler his *Miranda* rights. (*Id.* at 6:17–7:13.)

The Court concludes that the audio recording contains no evidence of strategic efforts to "undermine" *Miranda*. *Seibert*, 542 U.S. at 616. The pre-*Miranda* questioning was brief and largely confined to ordinary booking questions. Additionally, there is no indication that officers coerced Traxler or deprived him of "a meaningful opportunity to make an informed choice regarding his right to provide police with an admissible statement." *Aguilar*, 384 F.3d at 525. Thus, the Court adopts the recommendation and denies Traxler's motion to suppress his statements to law enforcement.

### C.    The May Warrant

Traxler also objects to the Magistrate Judge's recommendation that this Court deny the motion to suppress evidence seized during the execution of the May Warrant. For the reasons discussed below, Court concurs with the Magistrate Judge and denies the motion.

### 1.    *Existence of probable cause*

Traxler first argues that the May Warrant was not supported by probable cause. (Doc. No. 112 at 2–5.) The Court disagrees.

The Fourth Amendment requires that the issuance of a warrant be supported by sufficient probable cause. *E.g.*, *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). "Probable cause is a fair probability that evidence of a crime will be found in the location searched." *United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) (quotation omitted). Thus, there must be a sufficient connection "between the contraband being sought and the place being searched." *United States v. Ralston*, 88 F.4th 776, 780 (8th Cir. 2023). The nexus between the location and the contraband requires examining "all the

circumstances set forth in the affidavit" and is established when, given "the nature of the crime," there is a "reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657–58 (8th Cir. 1999); *see also United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (noting that whether probable cause exists depends on the totality of the circumstances (quotation omitted)). Where, as here, the court that issued the warrant relied only on the affidavit in support of that warrant when determining the existence of probable cause, then this Court also looks only to "the information found within the four corners of the affidavit." *Evans*, 4 F.4th at 636 (quotation omitted). The Court gives "great deference" to another judge's determination of the existence of probable cause, and it will grant a motion to suppress only if the signing judge did not have "a substantial basis for finding probable cause to support the issuance of the search warrant." *Solomon*, 432 F.3d at 827. Courts reject a "hypertechnical" review and instead use a "common sense approach." *Id.* (quotation omitted).

Traxler argues that, though the affidavit established a nexus between McKeever and the shooting, it does not establish a nexus between the Graham Avenue apartment and the shooting, especially because twenty-five days elapsed between the shooting and the date that the May Warrant was executed. Traxler's argument, however, relies on a characterization of the affidavit that understates—or even ignores—important details contained in it that connect McKeever to the Graham Avenue apartment. For example, the affidavit includes the following allegations, which Traxler does not acknowledge, and which clearly connect McKeever to the apartment: McKeever was observed in the parking garage of the Graham Avenue apartment; law enforcement officers corroborated

McKeever's phone pings off the tower near the Graham Avenue apartment with a secondary locating tool; McKeever's cell phone transmitted data to the cell tower near the Graham Avenue apartment "most days of the week," with the "highest activations in the late evening hours"; during the weeks leading up to and following the shooting, McKeever's cell phone transmitted data to the cell tower near the Graham Avenue apartment in a manner consistent with someone spending extended amounts of time near that cell tower; McKeever's cell phone transmitted data to the cell tower near the Graham Avenue apartment on the day after the shooting; McKeever spent a significant amount of time on the phone with Traxler (who was known to reside at the Graham Avenue Apartment); and law enforcement officers observed McKeever and Traxler driving in a car together a week prior to the warrant. (Gov. Ex. 4 at 4–5.)

In light of these allegations, the Court cannot conclude that the signing judge lacked a substantial basis to believe that McKeever was connected to the Graham Avenue apartment at times relevant to the criminal activity noted in the affidavit.  Nor can the Court conclude that the signing judge lacked a basis to conclude that "a fair probability" existed that "evidence of a crime will be found in the location searched."  *Evans*, 4 F.4th at 636. Thus, the Court denies the motion.

### 2.    *Request for a* **Franks** *hearing*

Traxler also objects to the Magistrate Judge's conclusion that Traxler was not entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Again, the Court is not convinced to sustain the objection.

Under *Franks*, a defendant may request a hearing for the purpose of "challeng[ing] a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citing *Franks*, 438 U.S. at 155–56.) Traxler bears the burden of showing entitlement to a *Franks* hearing. *Id.* To meet this burden, he must show: "(1) that the affiant . . . knowingly and intentionally made false statements or made them in reckless disregard for the truth and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Id.* (quotation omitted). This preliminary showing "is not lightly met." *Id.* (quotation omitted).

Traxler asserts that the affiant omitted three material facts that, if included, would have precluded a finding of probable cause in relation to the May Warrant. None of the three asserted omissions, however, compels the Court to hold a *Franks* hearing.

First, Traxler argues that law enforcement knew—but did not mention in the affidavit—that the only individuals associated with the Graham Avenue address in DVS were Traxler and a female, A.H., and that McKeever was not a renter at that property. The inclusion of this information in the affidavit, however, would not change the Court's probable-cause determination. The affidavit already makes clear that an investigation into McKeever's location and call history, among other observations, shows that he uses the Graham Avenue apartment as a "primary address." Whether McKeever has signed a lease or is otherwise a renter of that apartment would not change the observations underlying the affiant's conclusion regarding the time McKeever spent at the apartment and the

probability that his personal property would be found there.  More specifically, the May Warrant was predicated on the allegations that McKeever spent a significant amount of time at that location in the weeks and days leading up to and following the shooting. Inclusion of the names on the lease in the warrant's affidavit would not undermine the probability that evidence of the shooting would be found at the Graham Avenue apartment.

Second, Traxler argues that although the affiant had knowledge that Traxler was not seen on surveillance footage with McKeever on the night of the shooting, the affidavit does not include any such statement.  While seeing Traxler and McKeever together on the night of the shooting would have certainly increased the probability that evidence of the shooting would be recovered from the apartment, the absence of such information does not render the affidavit insufficient, especially in light of the other facts contained in the affidavit that establish probable cause.  For example, McKeever's frequent visits to the Graham Avenue apartment both before and after the shooting establishes a fair probability that evidence of the shooting would be found there, regardless of whether McKeever was also observed on surveillance footage with Traxler on the night of the shooting.

Finally, Traxler argues that the affiant failed to discuss the limitations of cell tower data, citing the Supreme Court's "description of the [cell tower] technology at issue" in *Carpenter v. United States*, 585 U.S. 296 (2018).  (Doc. No. 112 at 11.)  Traxler asserts that the *Carpenter* opinion "demonstrate[s] the nature of the omission and why it is critical to probable cause."  (*Id.*)  The Court concludes that including statements regarding the nature of cell tower data would not have undermined the probable cause finding made by the signing judge for two reasons.  First, while *Carpenter* includes a description of cell site

14

location tracking technology and notes certain limitations of this information, 585 U.S. at 300–00, *Carpenter* concerned an investigation that occurred in 2011—fourteen years ago. Absent some indication that the technology that the affiant relied on in this case is identical in material ways to that in *Carpenter*, Traxler's argument is unavailing.[4]  Second, the affidavit included additional information to corroborate the cell tower data, including that law enforcement officers used a cell phone locating tool to confirm that McKeever was at the Graham Avenue apartment, that McKeever had been seen on video surveillance at the property, and that call logs showed that McKeever and Traxler spent a significant amount of time communicating with one another.

Thus, the Court concludes that Traxler has not met his burden to show entitlement to a *Franks* hearing.[5]

## II.    CRYER'S OBJECTIONS

### A.    Motion to Dismiss Count 9

Cryer objects to the Magistrate Judge's conclusion that 18 U.S.C. § 931 (the body armor statute) that he is charged with violating does not exceed Congress's Commerce Clause power.  According to Cryer, the Magistrate Judge failed to meaningfully apply the criteria set forth in *United States v. Lopez*, 514 U.S. 549 (1995) when evaluating the

---

[4] Moreover, contrary to Traxler's argument, the *Carpenter* opinion does not suggest that cell phone tower data is unreliable, but instead focuses on the privacy concerns associated with information that was "rapidly approaching GPS-level precision."  585 U.S. at 313.

[5] Traxler also objects to the Magistrate Judge's alternative conclusion that, even if the warrant lacked probable cause, the good-faith exception to the exclusionary rule does not apply.  The Court need not address this argument in light of its conclusion that the signing judge had a substantial basis to believe that the warrant was supported by probable cause.

statute's constitutionality. (Doc. No. 111 at 3–6.) This argument, however, conflicts with analogous precedent, and thus the Court declines to sustain Cryer's objection.

Cryer argues that the body armor statute is unconstitutional like the statute at issue in *Lopez*, which criminalized the possession of firearms in school zones. In that case, the Supreme Court concluded that the Gun-Free School Zones Act, 18 U.S.C. § 922(q), lacked a "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," and, therefore, the statute exceeded Congress's authority. 514 U.S. at 561. Contrary to Cryer's argument, however, and unlike the statute at issue in *Lopez*, the body armor statute at issue in this case includes an individualized jurisdictional element. Specifically, Section 931(a) explicitly regulates only body armor that is "sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire." *See* 18 U.S.C. §§ 931(a), 921(a)(35). To obtain a conviction under this statute, the Government must establish that the specific body armor at issue was "sold or offered for sale, in interstate or foreign commerce." *See* 18 U.S.C. § 921(a)(35).

Although the Court is unaware of any opinions from the Eighth Circuit regarding the constitutionality of the body armor statute, the Eighth Circuit has concluded that criminal statutes with jurisdictional elements like the one in the body armor statute fall within Congress's Commerce Clause power. *E.g.*, *United States v. Hari*, 67 F.4th 903, 909–10 (8th Cir.), *cert. denied*, 144 S. Ct. 436 (2023) (noting that the Eighth Circuit has "not found, any case in which a federal criminal statute including an interstate commerce jurisdictional element has been held to exceed Congress's authority under the Commerce

16

Clause"); *United States v. Crenshaw*, 359 F.3d 977, 992 (8th Cir. 2004) (concluding that unlike the statute at issue in *Lopez*, 18 U.S.C. § 1959, committing murder in aid of racketeering activity, contained an explicit jurisdiction element); *United States v. Bausch*, 140 F.3d 739, 741 (8th Cir. 1998) (concluding that unlike the statute at issue in *Lopez*, 18 U.S.C. § 2252(a)(4)(B), the statute prohibiting intrastate possession of child pornography, contained an explicit jurisdiction element). Explicit jurisdictional elements such as the one in the body armor statute, ensure that the statute will be applied only to instances that fit within Congress's regulatory power. *Hari*, 67 F.4th at 909–10.

In addition, several district courts in other circuits have assessed the constitutionality of the body armor statute, and they all have determined the statute is constitutional, unlike the statute at issue in *Lopez*. *See United States v. Davis*, 906 F. Supp. 2d 545, 559 (S.D.W. Va. 2012) (upholding the constitutionality of the body armor statute due to its "express jurisdictional element"); *United States v. Marler*, 402 F. Supp. 2d 852, 855 (N.D. Ohio 2005) (concluding that the body armor statute "contains the requisite jurisdictional element and has a sufficient nexus to interstate commerce to be constitutional"); *United States v. Kitsch*, 307 F. Supp. 2d 657, 661 (E.D. Pa. 2004) (professing the court's unawareness of any "recent case where the Court has sustained a facial challenge to a law containing a jurisdictional element," and stating that it would be "surprised" to hear of a court striking down "an act of Congress that carefully limited its reach to activities within that body's commerce power").

Therefore, the Court overrules Cryer's objection, adopts the Magistrate Judge's recommendation, and denies Cryer's motion to dismiss Count 9 of the Indictment.

**B.    Search and Seizure of the Blue BMW**

Cryer also objects to the Magistrate Judge's conclusion that the seizure of the blue BMW falls within the automobile exception to the warrant requirement.[6]

The automobile exception permits law enforcement officers to seize or search a vehicle without a warrant when they have probable cause to do so.  *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."); *see also, e.g.*, *Hill*, 91 F.3d at 1070 ("Law enforcement officials may seize a vehicle without a warrant if there is probable cause to believe that contraband is hidden within."); *United States v. Maccani*, 526 F. Supp. 3d 420, 449 (N.D. Iowa 2021), *aff'd*, 49 F.4th 1126 (8th Cir. 2022) (noting that, the "only" Fourth Amendment requirement for the search or seizure of a vehicle "is the requirement that officers possess

---

[6] The Magistrate Judge recommends a conclusion that the June 24 Warrant authorized law enforcement officers to seize vehicles parked on the premises to be searched.  (Doc. No. 103 at 5.)  Cryer objects to this recommendation, arguing that the June 24 Warrant permitted the search of the residence, as well as "all assigned storage units or outbuildings" associated with it (Gov. Ex. 1 at 12), but it did not include vehicles to be searched.  (Doc. No. 111 at 6–9.)  Under certain circumstances, vehicles parked on a property that is subject to a search warrant may be embraced by the warrant.  *See United States v. Pennington*, 287 F.3d 739, 745 (8th Cir.), *cert. denied*, 537 U.S. 1022 (2002) (concluding that "a vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises"); *see also United States v. Hill*, 8 F.4th 757, 760 (8th Cir. 2021) (concluding that vehicle parked in driveway fell within warrant authorizing search of premises and curtilage); *United States v. Coleman*, 909 F.3d 925, 931 (8th Cir. 2018) (same).  Given the Court's determination that the automobile exception permits the seizure of the blue BMW, however, the Court need not determine whether the scope of the June 24 Warrant permitted the seizure of the blue BMW.  Likewise, the Court need not address whether the good faith or plain view exceptions to the warrant requirements apply in this case.

probable cause to believe contraband will be discovered somewhere in the vehicle")
(citing *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996)).  The Government bears
the burden to establish the existence of probable cause.  *United States v. Kennedy*, 427 F.3d
1136, 1140 (8th Cir. 2005).

Cryer argues that the warrantless seizure of the BMW violated his Fourth
Amendment rights because too much time had passed since law enforcement officers had
observed Cryer loading suspected drugs into the BMW, and there were no exigent
circumstances to justify the warrantless seizure.[7]  The Court concludes that neither
argument prevents the application of the automobile exception here.

First, Cryer's staleness argument overlooks Eighth Circuit caselaw finding probable
cause based on information that was several weeks old or older, especially in the context
of suspected drug-related offenses.  *See United States v. Smith*, 21 F.4th 510, 515 (8th Cir.
2021) (concluding that probable cause existed despite the passage of three months since
the last observation of drug-related activity and noting that the Eighth Circuit has
"concluded that information was not stale even where much longer periods [than three
months] had passed") (collecting cases); *United States v. Jeanetta*, 533 F.3d 651, 655 (8th
Cir. 2008) (concluding that for certain offenses, such as an ongoing drug-related offense,
"intervals of weeks or months . . . do[] not necessarily make the information stale"); *United
States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (concluding that a period of two and

---

[7] Cryer only moves to suppress evidence uncovered from the seizure of the blue BMW;
therefore, the Court will not address the seizure of the white Chevrolet in this Order.  (*See*
Doc. No. 85 at 4–6; Doc. No. 111 at 7.)  Cryer also makes no challenge to the search
warrant that investigating officers obtained to search the BMW after it was impounded.

a half weeks between a controlled purchase of illegal drugs and the date of the warrant application did not render the incriminating information stale because of the ongoing nature of the drug-related offenses that officers suspected the defendant of committing).

Cryer's argument also overlooks Eighth Circuit caselaw applying the automobile exception—absent exigent circumstances—so long as law enforcement officers had probable cause to believe that the vehicle being searched contained contraband or evidence of criminal activity.  *See United States v. Blaylock*, 535 F.3d 922, 927 (8th Cir. 2008) (applying the automobile exception absent exigent circumstances to uphold the warrantless search of a vehicle parked in the driveway of a residence subject to a search warrant because probable cause existed to search the vehicle based on observations that "[o]n two separate occasions within the month prior to the search, the Nissan was used to further drug trafficking"); *see also United States v. Barron*, No. 20-CV-3440, 2022 WL 829334, at *1 (8th Cir. Mar. 21, 2022) (applying the automobile exception because "[n]o exigency beyond that created by the ready mobility of an automobile is required" when "officers had probable cause to believe [the vehicle] contained drugs"); *Cronin v. Peterson*, 982 F.3d 1187, 1198 (8th Cir. 2020) (applying the automobile exception absent exigent circumstances to uphold the warrantless search of a vehicle because law enforcement officers received a report that the driver had purchased illegal drugs for a coworker, and because these officers believed that the car was the driver used regularly); *Hill*, 91 F.3d at 1070 (applying the automobile exception absent exigent circumstances to permit seizure of a vehicle without a warrant because officers had probable cause to believe the locked center console contained contraband or evidence of drug-related offenses).

In this case, at the time of the seizure, officers had probable cause to believe that contraband or evidence of a crime would be found within the BMW. At the time of seizure, law enforcement officers were in possession of a surveillance video of the Graham Avenue apartment that depicted Cryer loading large brown cardboard boxes into the blue BMW. (Gov. Ex. 1 at 6.) The brown cardboard boxes matched the other boxes found at the Graham Avenue apartment to contain large quantities of narcotics. (*Id.*) Law enforcement officers had additional surveillance footage from later that same evening of several vehicles and individuals meeting with Cryer both inside and directly outside the BMW parked on a street in St. Paul. (*Id.* at 7.) Officers had previously observed the BMW parked in front of the garage of Cryer's home from which he was observed regularly coming and going. (*Id.* at 8.) Law enforcement officers also had information that Cryer was already under investigation as a person of interest in a shooting that occurred in May 2024. (*Id.* at 8–9.) Several days prior to the search, law enforcement officers identified a rental vehicle matching the one Cryer was reported to have been driving in the shooting that had been rented in Cryer's girlfriend's name. (*Id.* at 10.) Law enforcement officers recovered it and found evidence of new damage caused by gunfire on the vehicle. (*Id.*) The officers' knowledge of the ongoing suspected drug trafficking activity involving Cryer using the BMW to transport drugs, as well as their awareness of Cryer's past involvement in a shooting, supplied sufficient reason to believe that evidence of criminal activity would be recovered from inside the BMW.

For these reasons, the Court adopts the Magistrate Judge's recommendation and denies Cryer's motion to suppress.

# ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant Jumoke Ace Maceo Cryer's Objections to the R&R (Doc. No. 111) are OVERRULED.

2. Defendant Christopher Charles Traxler's Objections (Doc. No. 112) are OVERRULED.

3. The R&R (Doc. No. 103) is ADOPTED.

4. Traxler's Motion to Dismiss Count Six of the Indictment (Doc. No. 72) is DENIED.

5. Traxler's Motion to Suppress Statements (Doc. No. 74) is DENIED.

6. Traxler's Motion to Suppress Fruits of Search and Seizure (Doc. No. 75) is DENIED.

7. Cryer's Motion to Dismiss Count 9 of the Indictment (Doc. No. 68) is DENIED.

8. Cryer's Motion to Suppress Evidence Seized from Execution of Search Warrant (Doc. No. 69) is DENIED.

Dated:  June 2, 2025

_s/Jeffrey M. Bryan_____
Judge Jeffrey M. Bryan
United States District Court